UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOAN MCCANN,

        Plaintiff,

v.                                                    Case No. 16-C-1310

EARTH SENSE ENERGY SYSTEMS, INC.,

        Defendant.

---

## DECISION AND ORDER

---

In this action the Plaintiff alleges that her former employer, Earth Sense Energy Systems, Inc., violated the Americans with Disabilities Act and the Family and Medical Leave Act by discriminating against her on the basis of her cancer diagnosis and retaliating against her for exercising her rights under the FMLA. The Defendant has moved for dismissal. For the reasons given below, the motion will be granted in part and denied in part.

At this stage, the facts alleged in the complaint must be taken as true. *Szabo v. Bridgeport Mach., Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (noting that "[t]he reason why judges accept a complaint's factual allegations when ruling on a motion to dismiss under Rule 12(b)(6) is that a motion to dismiss tests the legal sufficiency of a pleading"). According to the complaint, senior employees of the Defendant began harassing the Plaintiff, the company's comptroller, after she began using FMLA leave to attend to her recent cancer diagnosis. More detailed allegations are provided below.

The Defendant first argues that constructive discharge claims are not cognizable under the

ADA. That statute provides relief when an employer has engaged in any number of discriminatory activities, but absent among these is a "constructive discharge." 42 U.S.C. § 12112. Even if "constructive discharge" is not mentioned *as such*, however, it is no stretch to conclude that the kinds of activities that could give rise to a constructive discharge claim would fit within the ennumerated activities prohibited by the statute. For example, if an employer makes a working environment intolerable because of an employee's disability, that could constitute "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . advancement . . . [or] . . . . other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). It could also constitute "limiting . . . [an] employee in a way that adversely affects the opportunities or status of such . . . employee" under §(b)(1). Thus, the Seventh Circuit has had little trouble entertaining constructive discharge claims under the ADA. *See, e.g., Wright v. Illinois Dep't of Children & Family Servs.,* 798 F.3d 513, 527 (7th Cir. 2015); *Chapin v. Fort–Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010).

The Defendant's fallback position is that even if such claims are cognizable in theory, the allegations contained in the Plaintiff's complaint do not rise to the level of constructive discharge. As the Seventh Circuit has noted (in an ADA case), an employee's constructive discharge can come in two forms. *Wright,* 798 F.3d at 527. "In the first form, an employee resigns due to alleged discriminatory harassment. Such cases require a plaintiff to show working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress, thereby allowing an employer to address a situation before it causes the employee to quit." *Id.* (citation omitted). The second form of constructive discharge "occurs '[w]hen an employer acts in a manner so as to have communicated

2

to a reasonable employee that she will be terminated.'" *Id*.

Here, the Plaintiff proceeds largely under this second form of constructive discharge. Under the second form, however, it is not enough to allege that she believes she will be terminated. Instead, she must allege both the prospect of *imminent* termination as well as intolerable working conditions. "Our circuit has recognized two different forms of constructive discharge, but neither dispenses with the requirement that the work environment had become intolerable." *Chapin v. Fort-Rohr Motors, Inc.,* 621 F.3d 673, 679 (7th Cir. 2010). The point of these requirements is that employees are generally expected to remain at work while seeking redress, not simply to walk away and then sue. *Id.* It is only in those circumstances where an employee cannot reasonably be expected to remain that she may quit and sue later. These situations often involve threats to personal safety—including the displaying of a noose and holding a gun to the plaintiff's head. *Porter v. Erie Foods, Int'l, Inc.,* 576 F.3d 629, 640 (7th Cir. 2009); *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1198-99 (7th Cir. 1992).

Here, the Plaintiff alleges that between the time she was approved for FMLA leave in February 2014 and her departure from the company the following June, Chad Curtis (operations manager) and Jed Martin (the company's owner) made unprovoked comments to her about her disability, including questions about when her treatments would be finished and when she could expect to work more hours. Allegedly, in March 2014 Martin told her, "because of your cancer, you're not able to give us what we need" and "because of your doctor's appointments and your health, you're not able to work the hours we need you to." (ECF No. 1 at ¶¶ 46, 47.) Two months later, he repeated these sentiments by noting that her illness appeared to be affecting her work and that she was "ripping off" the company by taking leave under the FMLA. In addition, the company

3

hired two employees in the accounting department underneath her, and these employees were encouraged to learn the Plaintiff's job and responsibilities. The Plaintiff took this as a sign that the company was looking to replace her with others. (The company portrays itself as acting responsibly given the uncertainties with the Plaintiff's health, but that is a factual matter beyond the scope of the present motion.) Finally, the complaint alleges that an invoice from a law firm was deliberately left on her chair with notations that the legal work regarded the FMLA and an accountant for the company. She interpreted this as further harassment regarding her leave because the company was pointing out the costs the it was incurring due to her illness.

I am satisfied that these facts, if true, establish only that a reasonable employee would believe her job was in jeopardy, not that she was in danger of *imminent* termination. If true, the allegations are suggestive of bosses who were unhappy that she was out of the office a lot and did not like the prospect of paying her for that time. But nowhere is there any suggestion that termination was right around the corner. In *EEOC v. University of Chicago Hospitals,* for example, the Seventh Circuit found that a claim of constructive discharge could move forward to trial where an employee arrived at work to find her belongings packed and her office being used as storage. 267 F.3d 673, 679 (7th Cir. 2010). Here, there is no such triggering event justifying the employee from jumping the gun and resigning. "No reasonable employee standing in [the employee's] shoes would believe that had he not resigned, he would have been immediately fired. Unlike in *University of Chicago Hospitals,* there is nothing to indicate that a firing here was an imminent and inevitable event." *Chapin v. Fort-Rohr Motors, Inc.,* 621 F.3d 673, 680 (7th Cir. 2010).

In fact, the complaint suggests just the opposite. The worst comments allegedly made were uttered in February and March of 2014, and yet the Plaintiff remained employed through June 9,

4

when she resigned. There is nothing in the complaint suggesting that any comment or condition precipitated her departure on that specific date, and neither is any deterioration in the workplace environment perceptible. Instead, the complaint paints a picture of a workplace that was undeniably unpleasant for the Plaintiff but not any less tolerable in June, when she resigned, than it had been earlier. The working conditions cannot therefore be described as so intolerable that they necessitated quitting at that moment. Moreover, in her own words the message she received was that "[as for] employees who did not receive a raise, Defendant was hoping they would quit and, if they did not quit, Defendant would eventually terminate their employment." (ECF No. 1 at ¶ 40.) An employer who hopes an employee will quit and who might "eventually" terminate that employee's employment has not constructively discharged the employee. The complaint, being completely silent about what actually precipitated the decision to quit on June 9, thus lacks the immediacy of other cases in which the employee resigned just before the axe was about to fall. "Here, even construing all the evidence in Chapin's favor, no reasonable employee standing in Chapin's shoes would believe that had he not resigned, he would have been immediately fired." *Chapin.,* 621 F.3d at 680.

As for the FMLA claim, the Defendant first argues that it never had more than 40 employees during the relevant period, and thus the Plaintiff did not qualify as a covered employee under 29 U.S.C. § 2611(2)(B)(ii). As the Plaintiff notes, however, the complaint alleges otherwise, and factual disputes are not ripe for decision at the 12(b)(6) stage.[1] The Defendant's secondary position is that the complaint does not allege facts sufficiently burdensome to qualify as an adverse

---

[1] This is the kind of issue that could prove ripe for determination under this court's "fast track" summary judgment procedures, available under "Instructions for Litigants" on the district court's website. (www.wied.uscourts.gov/judges/william-c-griesbach).

5

employment action in an FMLA retaliation case. However, an adverse employment action need not rise to the level of constructive discharge to be actionable. Materially adverse actions are not limited to employment-related activities but include any actions that would dissuade a reasonable employee from exercising his rights under the FMLA. *See Burlington Northern & Santa Fe Ry. v. White,* 548 U.S. 53, 67 (2006). Here, even if the facts as alleged would not have precipitated quitting by a reasonable employee, being harassed in the fashion alleged could certainly dissuade a reasonable employee from exercising her FMLA rights.

For all these reasons, the motion to dismiss is **GRANTED** as to the ADA claim but **DENIED** as to the FMLA claim. The clerk will set the case on the calendar for a telephonic scheduling conference.

**SO ORDERED** this 18th day of April, 2017.

/s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court